UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JERRY D. HARDING, SR.; SANDRA L. HARDING, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) CV 03-B-2613-S<br>) |
| CITY OF LEEDS, ALABAMA, | )<br>) |
| Defendant. | ) |

### MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 11.) Plaintiffs Jerry D. Harding, Sr., and Sandra L. Harding, have sued defendant, the City of Leeds, Alabama, alleging violations of their rights to due process and equal protection related to defendant's denial of their application for a liquor license. On April 27, 2004, the court granted in part plaintiffs' Rule 56(f) motion to postpone consideration of defendant's Motion for Summary Judgment and postponed consideration of defendant's Motion for Summary Judgment as it relates to plaintiffs' equal protection claims. (Doc. 17.) Therefore, the court herein decides only whether summary judgment is due to be entered as to plaintiffs' due-process claims. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 11), is due to be granted as to plaintiffs' due process claims, and such claims are due to be dismissed.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

Plaintiffs, Jerry D. and Sandra L. Harding, formerly operated a bar called the Office Lounge, which was within the city limits of defendant, the City of Leeds, Alabama, under a liquor license issued by defendant. (Plaintiffs' Combined Statement of Facts in Response to Defendants' Undisputed Facts and Evidentiary Submission in Support of Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment ["Pls. Evid. Sub."], Ex. 1 ¶¶ 3-5.) Plaintiffs had opened the bar in 1994. (*Id.* ¶ 4.)

Plaintiffs' liquor license expired, and, on September 5, 2001, plaintiffs filed an application for a new liquor license.[1] (Defendant's Memorandum of Law in Support of Motion for Summary Judgment and Evidentiary Submission ["Def. Evid. Sub."], Ex. 2; Pls. Evid. Sub., Ex. 2 ¶ 7.) The application was placed on the agenda of defendant's City Council on October 1, 2001. (Def. Evid. Sub., Ex. 3 at 1; Pls. Evid. Sub., Ex. 2 ¶ 9.) Plaintiffs arrived at the City Council meeting before the meeting began. (Pls. Evid. Sub., Ex. 2 ¶ 10.) They told City Manager Danny Womble that they "were present and ready to speak or answer questions when the Council conducted the required public hearing on [their] license application." (*Id.*, Ex. 1 ¶ 9.) Mr. Harding described the City Council's meeting as follows:

> 10. I remember that when our item was announced by the Mayor, only the Mayor and some city officials spoke; but, they did not speak very long. I

---

[1]Plaintiffs' Complaint alleges, "Prior to November, 2001, Plaintiffs regularly and routinely applied . . . for the necessary annual license(s) to sell liquor at their lounge, and regularly and routinely received the annual license(s) necessary to operate . . . ." (Doc. 1 ¶ 9.)

remember that when the Police Chief got up to speak, Councilman Keith Hall looked at his fellow Councilmen and started snickering.

11. After some city people spoke, the Mayor immediately asked the Council how it wanted to vote. The City Council then voted to deny our application.

12. The Council did not conduct a public hearing, nor ask me if I had anything to say about what the city officials had just stated. The Council made its decision on my application after hearing only a minute or two from Leeds officials.

(*Id*., Ex. 1 ¶¶ 10-12.)

The minutes of the Council Meeting record the discussion of plaintiffs' application as follows:

City Manager Womble presented the application for a liquor license from the Office Lounge from Sandra Burke and Jerry Dale Hardy. He said he had asked the Fire Chief, Police Chief and the Inspections Department to do a preliminary investigation into the application and asked each of them to report.

Chief Harper stated that the application was a renewal and that they did not find anything that would prohibit renewing the license and was approved by the Fire Department.

Chief Hudson stated that they all had a copy of the memo he sent to the City Manager. He read the memo citing 20 incident reports and made 10 arrests related to the Office Lounge and that his office had received complaints from neighboring business owners about property damage, illegal parking, drunkenness and urination in public, etc., from patrons of the bar. Chief Hudson further read that in May 1999, he informed the Management of the bar about the complaints and his officers increased enforcement in the area and that documentation to validate his statements would be provided upon request. Chief Hudson said the physical location of the establishment was within the City Ordinance requirements, a church was located nearby and across the street but that it was over 50 feet from the Office Lounge building as required by the Ordinance.

> Bob Parker stated that the building was within line with the proper zoning ordinance and that it complied with the building code and had no reason to recommend denying the license.
>
> Councilmember Drake moved to deny the application. Seconded by Councilmember Kennedy. Councilmember Washington "abstained". Motion carried.

(Def. Evid. Sub., Ex. 3 at 4.)

On May 9, 2002, plaintiffs filed a Chapter 7 bankruptcy petition, in which they did not list their current claims against defendant as a "contingent or unliquidated claim." (Pls. Evid. Sub., Ex. 3, ex. A.) However, plaintiffs informed the appointed trustee, Andre Toffel, and their creditors at the meeting of the creditors on June 13, 2002, "that they thought they may have a legal claim against the City of Leeds, Alabama arising out of Leeds denying their application for a lounge liquor license in October 2001." (*Id.*, Ex. 3 ¶ 7.) On September 6, 2002, after plaintiffs retained their current counsel, Michael Graffeo, Toffel sent the following letter to plaintiffs' counsel:

> Dear Mike:
>
> I am serving as the Trustee in Bankruptcy for the above debtor(s). At the Meeting of Creditors, they testified that they were involved in a lawsuit, and that you were handling this for them. If you are interested in continuing on with this lawsuit, I will need to employ your firm as my Special Attorney.
>
> Please call me when you get a chance and let me know what you think about that the value of the lawsuit. . . . If the claim has value, I will have to employ you as my attorney; this is the best way to ensure that you get paid. I will supply you with the necessary form and guidance in this Bankruptcy Court, and essentially all you would have to do is to continue to handle this matter as you had before, except that I would be your client from now on.

5

(*Id.*, Ex. 3, ex. B.)  At the bottom of the letter, Toffel wrote, "It sounds like its worth pursuing.  Go ahead & do the above & call me if we need to talk further."  (*Id.*)

Plaintiffs were discharged from bankruptcy on September 24, 2002.  (Pls. Evid. Sub., Ex. 3, ex. A at 2.)  The instant action was filed on September 30, 2003.  (Doc. 1.)

Thereafter, on October 21, 2003, plaintiffs' counsel filed with the bankruptcy court an Application for Approval of Employment of Professional Person, seeking the bankruptcy court's approval "to investigate and prosecute potential legal claims [plaintiffs] may [have had] against [defendant], arising prior to the filing of the petition herein and from the denial by [defendant] of an application by [plaintiffs] to continue operation of a business in [defendant] that previously sold alcoholic beverages . . . ."  (Pls. Evid. Sub., Ex. 3, ex. C.) Counsel's Application was approved on October 24, 2003.  (*Id.*, Ex. 3, ex. A at 2 and ex. D.)

### III.  DISCUSSION

Defendant contends that plaintiffs' substantive and procedural due process claims are due to be dismissed because, under Alabama law, plaintiffs do not have a protected property interest in a liquor license, and because such claims are barred by the doctrine of judicial estoppel.

**A.  PROPERTY INTEREST – LIQUOR LICENSE**

The Fourteenth Amendment to the United States Constitution provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. CONST. amend. XIV, § 1.  "An essential principle of

6

due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985)(internal citations and quotations omitted). The Supreme Court has "described 'the root requirement' of the Due Process Clause as being that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Id*. (internal citations and quotations omitted). The Eleventh Circuit Court of Appeals, has "developed a three-prong test for establishing a procedural due process clause violation under § 1983":

> First, [plaintiffs] must establish "a deprivation of a constitutionally-protected liberty or property interest." . . .
>
> Second, [plaintiffs] must establish "state action." . . .
>
> Third, and finally, [plaintiffs] must establish a "constitutionally inadequate process."

*Foxy Lady, Inc. v. City of Atlanta, Ga.*, 347 F.3d 1232, 1236 (11th Cir. 2003)(quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). The first requirement plaintiffs must establish in order to prove their claims of denial of due process is that they had a protected property interest in their application for a liquor license.[2]

"Property interests are not created by the [United States] Constitution but are defined by existing rules or understandings that stem from an independent source such as state law

---

[2] The court notes that there is a difference between being granted a liquor license and having a liquor license revoked. The parties do not dispute that defendant denied plaintiffs a license; it did not revoke plaintiffs' license.

and arise only where the plaintiff demonstrates a legitimate claim of entitlement." *Arrington v. Dickerson*, 915 F. Supp. 1503, 1508 (M.D. Ala. 1995)(quoting *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989)(quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972))). Therefore, whether plaintiffs had a property right in obtaining the requested liquor license depends upon whether Alabama law gives plaintiffs a legitimate claim to the liquor license.

The Eleventh Circuit Court of Appeals has recognized that Alabama law does not create a property interest or a liberty interest in a liquor license:

> [T]he Supreme Court of Alabama has held that a license to operate a bar or a package store is not property. *Ott v. Everett*, 420 So. 2d 258, 261 (Ala. 1982); *Ott v. Moody*, 216 So. 2d 177 (Ala. 1968); *O'Bar v. Town of Rainbow City*, 112 So. 2d 790 (Ala. 1959)("There is no contract, vested right or property in a license as against the power of a state or municipality to revoke it in a proper case.") ***In Alabama, "[a] license to engage in the sale of intoxicants is merely a privilege with no element of property right or vested interest of any kind*.**" *Broughton v. Alabama Alcoholic Beverage Control Bd.*, 348 So. 2d 1059, 1060 (Ala. Civ. App. 1977)(citing *Moody*). A federal court in Alabama has recognized that Alabama law creates no protected property interest in a liquor license. *Arrington v. Dickerson*, 915 F. Supp. 1503, 1509 (M.D. Ala. 1995) (citing *Broughton*).

*United States v. Shotts*, 145 F.3d 1289, 1295 (11th Cir. 1998)(emphasis added), *cert. denied* 525 U.S. 1177 (1999).

Plaintiffs have not argued that they have a property interest in their application for a liquor license.[3]  Because plaintiffs have not established that they had a property interest in

---

[3] Plaintiffs contend that the Code of the City of Leeds provides them with the right to a hearing on their application for a liquor license; therefore, they have a due process claim because they were not afforded such a hearing. In support of their argument, they cite the court to Alabama case law; however, in each of the cited cases, the plaintiffs' property interest at stake was a recognized property interest in the value of real property. *See Canton*

their application for a liquor license, they at least do not have a due process claim under the Fourteenth Amendment of the United States Constitution. Therefore, Counts I and II of their Complaint, alleging violations of their rights to substantive and procedural due process, will be dismissed.

**B. JUDICIAL ESTOPPEL – BANKRUPTCY**

In the alternative, defendant contends that plaintiffs' claims are barred by judicial estoppel because plaintiffs did not include their claims against defendant in their bankruptcy petition. In opposition to defendant's Motion for Summary Judgment, plaintiffs have submitted the affidavit of Andre Toffel, the bankruptcy trustee, who contends that he is the real party in interest, and that Toffel and plaintiffs' creditors were aware of their claims against the City before plaintiffs filed the instant action.

The court notes, "Judicial estoppel is an equitable concept invoked at a court's discretion and designed to prevent the perversion of the judicial process." *Parker v. Wendy's Intern., Inc.*, 365 F.3d 1268, 1271 (11th Cir. 2004)(internal citations and quotations omitted); *see also New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)("Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion.")(internal citations and quotations omitted). The facts

---

*v. City of Thorsby*, 855 So. 2d 1057, 1062 (Ala. 2003)(plaintiff alleged that zoning decision caused the value of his real property to decrease $ 60,000); *Speakman v. City of Cullman*, 829 So.2d 176, 177 (Ala. Civ. App. 2002)(plaintiffs challenging a zoning decision were owners of adjacent real property); *Kenmon & Assoc. v. Gentry*, 492 So. 2d 312, 315 (Ala. 1986)(interests at issue were interests of adjacent real property owners).

of this case, particularly the communications between plaintiffs, their counsel, the bankruptcy trustee, and the creditors, evince plaintiffs' intent to include their claims against Leeds as an asset in their bankruptcy estate.

Therefore, the court will deny defendant's motion to dismiss plaintiffs' claims on the ground of judicial estoppel.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law as to plaintiffs' substantive and procedural due process claims. An Order granting defendant's Motion for Summary Judgment and dismissing plaintiffs' due process claims and denying defendant's Motion for Summary Judgment based on judicial estoppel will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 23rd day of February, 2005.

_Sharon Lovelace Blackburn_
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE